**MINNEHOMA INSURANCE COMPANY,**
an Oklahoma Insurance
Corporation, Appellant,

v.

The OKLAHOMA STATE BOARD FOR
PROPERTY AND CASUALTY
RATES, Appellee.

No. 49378.

Supreme Court of Oklahoma.

April 12, 1977.

Doerner, Stuart, Saunders, Daniel & Langenkamp, William C. Anderson, Tulsa, for appellant.

Richard F. Berger, Jim D. Prock, Associate Counsel, Oklahoma Insurance Commission, Oklahoma City, for appellee.

LAVENDER, Vice Chief Justice:

Minnehoma Insurance Company (Company), an Oklahoma insurance corporation, by an independent filing, sought approval of a certain insurance policy form. The filed policy would modify a kind of casualty insurance coverage known as "vendor's single interest (VSI)" so as to provide a dual interest protection to both lenders and debtor-owners.

After hearing, the State Board for Property and Casualty Rates for Oklahoma (Board) issued its order, containing findings of facts and conclusions of law, that disapproved the filing. The order concluded the policy was ambiguous and would be misleading to the debtor-owner. Company seeks review of that order.

VSI (single interest) insurance coverage is approved and available in Oklahoma. A dual interest policy, as filed here, has not been approved and is not available in this state.

VSI coverage stems from a lender's right, as usually provided in a security agreement, to insure against casualty the collateral used to secure installment loans. Company's brief suggests normal collateral is an automobile, a motor home, a recreational vehicle, a motorcycle, or a power boat and motor. The VSI policy form here in evidence appears to be limited to automobiles as collateral. The VIS policy is titled "Single Interest Policy." The lender is the sole named insured. The debtor-owner pays the premium, but does not receive a copy of the policy. Coverage is conditioned on (1) default of the loan, and (2) repossession of the collateral by the lender. Payment is the lesser of (1) cost of repair, (2) remaining amount of the unpaid loan, or (3) actual cash value.

Here, the filed policy gives the same coverage as a VSI policy but extends that coverage to a dual interest so as to include the debtor-owner along with the lender. Both, the lender and the debtor-owner, are the named insureds. The debtor-owner pays the premium which is higher than the VSI premium. Debtor-owner receives a copy of the policy. The collateral is not limited to automobiles. The filing included rates for both automobiles and motor boats. The policy is titled "Collateral Protection Policy." Payment amount is the same as a VSI policy. That amount is the lesser of (1) cost of repair, (2) remaining amount of the

unpaid loan, or (3) actual cash value. Default of the loan and repossession of the collateral by the lender are not made conditions for coverage. Settlement may be made with the debtor-owner, as well as the lender, with joint payment unless lender demands otherwise. Removal of the two coverage conditions and allowing settlement with the debtor-owner are the principal differences between a VSI policy and the filed policy. Company says those differences are important advantages to the debtor-owner at a reasonable additional cost.

A review of the record shows Board's concern for the level of understanding of the dual interest policy by the debtor-owner as opposed to the sophisticated lender in the single interest policy. Board wants the policy titled with words incorporating "automobile insurance." Board believes the title "Collateral Protection Policy" is not understandable. It wants the policy to follow a recognizable format for automobile insurance. Finding number 15 says the combined factors there set out *may purport* an understanding of coverage to the debtor-owner that he does not have.

Board argues the findings numbered 8, 12, 13, 14, and 15 in the order support its conclusions. These findings are:

"8. The Board finds that the benefits under this policy are reduced as the debt is reduced and that option (2) of the settlement options listed in the preceding paragraph, the unpaid loan balance due the lender, will frequently be the limit of the company's liability.

\*　　\*　　\*　　\*　　\*　　\*

"12. The Board finds that to date it has required insurers through its decisions to file policies providing automobile insurance to their policyholders (in the case the debtor-owner) that follow a recognizable format, with a title incorporating the words 'automobile insurance' with agreements, exclusions and conditions considering that there is a movement at present to make automobile insurance policies more readable with such policies

referred to as plain talk insurance policies.

"13. The Board finds that the proposed policy form is not entitled automobile policy, but is entitled, a collateral protection policy and does not follow a recognizable format for automobile insurance.

"14. The Board finds that proposed policy form follows the format generally employed for lender's interest coverage only with extension of limited coverage to the debtor-owner incorporated therein.

"15. The combination of these factors—

—option settlements same as vendor's single interest (insurance solely for lender),

—policy being issued in insured's name,

—option settlements result in limited coverage for insured's interest,

—policy selected by party other than insured,

—much responsibility for giving the debtor-owner notice as to the type of coverage depends upon people who are not agents of the insured,

persuade the Board that this unfamiliar form of insurance may purport to give the debtor-owner coverage that he does not have."

Briefs of both parties, the Company and the Board, agree policy form approval by the Board is necessary, and grounds for disapproval are statutory. 36 O.S.1971, §§ 3610, 3611. Parties agree the Board's order must reflect a correct legal theory, and must be reasonably supported by the evidence. *Oklahoma Insp. Bur. v. State Bd. for Prop. & Cas. Rates*, Okl., 406 P.2d 453 (1965). Board rests its legal theory on § 3611 A, subd. 2 and 3. There is no contention the form of policy violates and does not comply with Insurance Code. See subd. 1.

Section 3611 provides in part:

"A. \* \* \* the Insurance Board \* \* \* shall disapprove any such form of policy \* \* \* *only*:

"1. \* \* \*

"2. If it contains or incorporates by reference any inconsistent, ambiguous, or

misleading clauses, or exceptions and conditions which deceptively affect the risks purported to be assumed in the general coverage of the contract.

"3. If it has any title, heading, or other indication of its provisions which is misleading." (Emphasis added.)

Disapproval can come *only* if any of the grounds found in the three subdivisions occur.

Board says its order tracks subd. 2 and 3. Board concludes the policy is ambiguous and misleading, for the debtor-owner will not understand it and will believe there is insurance coverage on his automobile when only a very limited coverage exists on his interest. Company argues the policy title of "Collateral Protection Policy" is not misleading. "Automobile Insurance" in the title would lend itself to the misunderstanding feared by the Board. Company emphasizes two bold-faced, red lettered legends printed on the policy front of the debtor-owner's copy. These legends read:

"THIS IS A RESTRICTED POLICY. READ ITS PROVISIONS CAREFULLY.

THIS POLICY DOES NOT PROVIDE BODILY INJURY AND PROPERTY DAMAGE LIABILITY INSURANCE OR ANY OTHER COVERAGE FOR WHICH A SPECIFIC PREMIUM CHARGE IS NOT MADE AND DOES NOT COMPLY WITH ANY FINANCIAL RESPONSIBILITY LAW."

and

"MAXIMUM PROTECTION

PROTECTION IS LIMITED TO THE LESSER OF (1) COST OF REPAIR; OR (2) THE UNPAID LOAN OR CONTRACT BALANCE DUE THE LENDER LESS UNEARNED INTEREST AND PAST DUE; OR (3) ACTUAL CASH VALUE OF COLLATERAL AT THE TIME OF LOSS. SUBJECT TO THE ABOVE DEDUCTIBLES AND THE POLICY PROVISIONS. REFER TO INSURING AGREEMENT # 4."

■ We measure the findings, relied upon in the Board's brief, and its conclusion, as to ambiguity and misleading of the debtor-owner, with the evidence in the record and the grounds for disapproval relied on by the Board in § 3611 A subd. 2, 3.

■ Finding number 8 is reasonably supported by the evidence. We have difficulty that the finding sustains a conclusion of ambiguity and misleading the debtor-owner. Any possible misleading is removed with the "Maximum Protection" legend. Findings 12, 13, and 14 appear to be reasonably supported by the evidence. Section 3611 does not require a recognizable format for automobile insurance. Company's filing for rates as to boats (both motor and sail), motorcycles, and mobile homes shows the coverage is not limited to automobile collateral. A borrower giving a lender a security interest through a security agreement must have some understanding of the term "collateral." It is difficult to find the title "Collateral Protection Policy" misleading under the coverage here offered. The "factors" in finding 15 do not singly or in combination support the Board's conclusions "that this unfamiliar form of insurance may purport to give the debtor-owner coverage that he does not have." The last factor speaks of notice. Evidence of record shows the debtor-owner may secure his own insurance to satisfy the condition of the security agreement. Two notices are sent prior to lender securing the dual interest coverage. This notice arrangement is not a part of the policy. The policy does allow cancellation by *any* of the parties on ten days written notice. This is after the policy is written.

■ Board based its rejection of this type of coverage on its power to disapprove the policy form under § 3611. That disapproval authority is limited. It may be exercised *only* if any of the grounds contained in the three subdivisions are present. The authority to disapprove does not carry with it the power to require a particular title. The title is the choice of the insurance company filing for approval. The policy form shall be disapproved if the title is misleading. Subd. 3. The authority to disapprove does not carry with it the power to require a familiar and recognizable format. The poli-

cy. form shall be disapproved if there are ambiguous and misleading clauses, or if exceptions and conditions deceptively affect the risk purported to be assumed in the general coverage. Subd. 2. The policy form shall be disapproved if there is violation or noncompliance with the insurance code. Subd. 1. Here, there is no such contention. Section 3610 requires policy form approval. Section 3611 limits disapproval to the grounds therein contained.

We reverse the order of the Board here appealed.

██ Company argues that upon a reversal of the order, this court, under its review powers, 36 O.S.1971, § 910 and the evidence before it, should approve the filed rates. The cause should not be remanded for that purpose. Here, the Board did not reach the rate question. Rates became a moot issue with the Board's disapproval of the form of the policy. We remand for the purpose of the Board exercising any of its powers as to rates.

On remand, the Board may consider additional evidence as to any other matters relating to this filing that is properly within its power and enter any appropriate order that is not inconsistent with the views expressed in this opinion.

REVERSED AND CAUSE REMANDED.

All of the Justices concur.